**In re Bobby Joe TAYLOR, Jr., Debtor.**

**Bobby Joe Taylor, Jr., Plaintiff,**

**v.**

**Steven Jacques d/b/a In–House Mortgage, Defendant.**

**Bankruptcy No. 00–73753.**

**Adversary No. 01–6311.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 29, 2002.

---

Ralph Goldberg, Esq., Decatur, GA, for Plaintiff.

Robert Michael Sheffield, Esq., Roswell, GA, for Defendant.

### ORDER

JOYCE BIHARY, Bankruptcy Judge.

This adversary proceeding is before the Court on defendant's motion to reconsider and amend the Court's Order entered on November 6, 2001, which denied defendant's motion to dismiss the complaint.[1] The complaint alleges that defendant's conduct violated the Georgia Fair Business Practices Act, and the defendant contends that the conduct at issue is exempt from the Act's coverage under GA. CODE ANN. § 10–1–396(1).

The plaintiff Bobby Joe Taylor, Jr. filed a complaint on July 24, 2001, alleging that in November of 1999, defendant sent a flyer to the public marketing his residential mortgage company and misrepresenting that he was approved by the Department of Housing and Urban Development ("HUD"). Plaintiff responded to the flyer and applied for a loan. Plaintiff alleges that defendant misrepresented to him that his loan had been approved and that there would be a closing. The loan did not close and, based on defendant's representations, plaintiff alleges that he stopped paying his bills and, as a result, lost two leased vehicles and was forced to file bankruptcy. Defendant did not receive any monies from the plaintiff. The complaint is based solely on the Georgia Fair Business Practices Act (hereinafter "FBPA").

Defendant filed a motion to dismiss the complaint under FED. R. CIV. P. 12(b)(6)

1. The defendant styled his motion as "defendant's motion to alter judgment", but the Court has not entered a judgment for either party in this matter. The Court did, however, enter an Order on November 6, 2001, denying the defendant's motion to dismiss. Thus, the Court construes the "motion to alter judgment" as a motion to reconsider the November 6, 2001 Order.

made applicable to adversary proceedings by FED. R. BANKR. P. 7012(b). The essence of defendant's motion was that defendant's conduct is exempt from the FBPA because mortgage brokers are licensed and regulated. Plaintiff filed a response, and the defendant did not file any reply. The parties' briefs raised a number of questions, and the Court set the matter for a hearing on November 5, 2001. At the hearing, the Court asked counsel to consider the significance of GA. CODE ANN. § 7–1–1020, which is a section of the Georgia law governing the state licensing of mortgage brokers that provides that nothing in the statute should be construed as limiting in any manner the application of the FBPA. Neither party had addressed this provision in their briefs. After considering the oral arguments presented by counsel, the briefs that had been filed in the case, and the standards governing a 12(b)(6) motion, the Court advised the parties in an oral ruling that the motion to dismiss would be denied. The Court entered a brief written Order denying the motion on November 6, 2001, after which defendant filed the motion to reconsider now before the Court.

■ The question presented by defendant's motion is whether the FBPA covers claims by a consumer against a mortgage broker for (1) misrepresenting the mortgage broker's relationship to HUD and (2) misrepresenting facts to a consumer in connection with the refinancing of a residential loan, or whether other regulations displace the FBPA. When considering a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), the Court must determine whether it appears beyond doubt that the plaintiff can prove no set of facts to support his claim and the Court considers all

well-pleaded facts set forth in the plaintiff's complaint as true. *GSW, Inc. v. Long County*, 999 F.2d 1508 (11th Cir. 1993), *Brogdon v. Nat'l Healthcare Corp.*, 103 F.Supp.2d 1322 (N.D.Ga.2000) (citing *Hall v. Coram Healthcare Corp.*, 157 F.3d 1286, 1287 (11th Cir.1998)).

■ Section 10–1–396 of the FBPA exempts two categories of actions from its coverage, one of which is relevant here.[2] That section provides, in pertinent part, as follows:

**10–1–396. Acts exempt from part.**

Nothing in this part shall apply to:

(1) Actions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States; ...

The Georgia Fair Business Practices Act became law in 1975. Two cases decided by the Georgia Court of Appeals address this exemption. *Chancellor et al. v. Gateway Lincoln–Mercury, Inc. et al.*, 233 Ga.App. 38, 502 S.E.2d 799 (1998), *Ferguson v. United Ins. Co. of Am.*, 163 Ga.App. 282, 293 S.E.2d 736 (1982). In both cases, the Court affirmed lower court determinations that dismissed claims brought under the FBPA. In *Ferguson*, the plaintiff brought a three count complaint against an insurance company, one of which alleged a violation of the FBPA. The Court concluded that insurance transactions were among those types of transactions which were exempt from the FBPA and stated "[t]his is especially true since the Insurance Code regulates unfair trade practices within the insurance industry ... and specifically defines the activity alleged

---

**2.** The other category of exempt conduct, described in GA. CODE ANN. § 10–1–396(2), protects the news media from the consequences of violations found in advertisements printed for others when the publisher is otherwise unaware of and uninvolved in the preparation of the false material.

in [the plaintiff's complaint] as an unfair or deceptive act or practice." *Ferguson,* 293 S.E.2d at 737. In reaching this conclusion, the Court found that insurance transactions in Georgia were authorized and regulated by the Georgia Insurance Code, that the Insurance Code created the Insurance Department and the Office of the Insurance Commissioner, that an insurer could not transact insurance except as authorized by the Insurance Commissioner, and that the Insurance Commissioner had full power and authority to make rules and regulations to effectuate provisions of the Insurance Code.

In *Chancellor,* a group of automobile purchasers sued a dealer and a finance company alleging that the defendants were required to inform the buyers that the dealer gave the finance company a discount from the face value of the sales contracts when the contracts were sold by the dealer to the finance company. The trial court had granted summary judgment on the claim pled under the FBPA, finding that the transaction was "essentially private." The Georgia Court of Appeals agreed, holding that the transaction between the dealer and the finance company was not a consumer transaction, that there were no public advertisements or misrepresentations regarding the discount fees, and that there was no impact or injury on the consumer market. *Chancellor,* 502 S.E.2d at 804–06. Addressing the exemption in GA. CODE ANN. § 10–1–396(1), the Court stated:

> The General Assembly intended that the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that FBPA not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise. O.C.G.A. § 10–1–396(1) provides that the FBPA shall not "apply to . . .

> actions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States."

*Chancellor,* 502 S.E.2d at 805. After citing GA. CODE ANN. § 10–1–396(1), the Court held that the Truth in Lending Act provided for the determination, calculation, and disclosure of finance charges, and that the Federal Reserve Board had promulgated Regulation Z which regulated finance charges and disclosures. Thus, the Court concluded, "this area of finance charges, disclosure, and truth in lending falls outside the FBPA, except where expressly covered." *Id.*

The parties cite two reported decisions by federal district judges in the Northern District of Georgia which address the significance of this exemption in the FBPA. *Brogdon v. Nat'l Healthcare Corp.,* 103 F.Supp.2d 1322 (N.D.Ga.2000), *Taylor v. Bear Stearns & Co. et al.,* 572 F.Supp. 667 (N.D.Ga.1983). In *Taylor v. Bear Stearns & Co.,* an investor sued brokerage firms and brokers, alleging that the defendants made unauthorized trades in the plaintiff's accounts in order to generate commissions. The Court considered the two possible interpretations of the exemption in § 10–1–396(1), stating as follows:

> The first interpretation would exempt from the Act conduct that was specifically authorized. The second interpretation would exempt conduct that is being regulated by an administrative agency... [T]he court perceives that an interpretation of section [10–1–396(1) ] that would exempt conduct authorized specifically by an agency as anomalous, for what administrative agency would authorize an unfair trade practice? In light of the purpose of the FBPA as well as a judicial construction of section [10–

1–396(1) ], the court reads the second interpretation as proper. *Taylor*, 572 F.Supp. at 674. The *Taylor* Court cited *Ferguson* for the proposition that the FBPA has no application when there is a remedy available to an injured consumer in a regulated industry, and relying on *Ferguson*, the Court held that the phrase "specifically authorized" in the exemption meant "specifically regulated." *Id.* at 675. The Court concluded that "where a consumer remedy exists, with no need to fill in a legal gap or create a consumer right, and where the industry which is the subject matter of the situation explicitly defines wrongful conduct or unfair and deceptive practices, the FBPA has no application." *Id.* The Court dismissed the claims under the FBPA, finding that the Securities and Exchange Act and the Commodities Exchange Act had a regulatory apparatus to prevent unfair practices that affect consumers and adequate remedies existed for the plaintiff.

In *Brogdon v. Nat'l Healthcare Corp.*, the plaintiffs, residents of a long-term health care facility, filed a twelve count complaint against certain health care facilities. The District Court dismissed the count alleging a claim under the FBPA, because the conduct was exempt from the FBPA under § 10–1–396(1). Citing *Ferguson, Chancellor* and *Taylor*, the Court concluded that "the FBPA does not apply in extensively regulated areas of the marketplace such as investment account transactions, finance charges and required disclosures by lenders, and insurance transactions." *Brogdon*, 103 F.Supp.2d at 1336. Since the defendant's long-term care facilities participated in the Medicare and Medicaid programs and the allega-

tions of deficient care are "heavily regulated" by state and federal agencies, the Court concluded that the FBPA did not encompass the plaintiff's claims. *Id.* at 1337.

Plaintiff argues that *Taylor* and *Brogdon* interpret *Chancellor* incorrectly and that the language in *Chancellor* is merely *dicta.* Plaintiff urges the Court to construe the exemption narrowly to exempt only conduct that is "specifically authorized," and not to exempt conduct that is "specifically regulated" as the Court did in *Taylor.* Unfortunately for the plaintiff, the case law in Georgia has not developed as he would have it. The reported cases, both in Georgia and in the federal courts applying the Georgia statute, have construed the exemption to cover conduct that is regulated, unless the FBPA or another statute provides otherwise.[3]

Plaintiff cites four unreported district court decisions from this district, but none of these cases supports plaintiff's argument. Two of these unpublished orders were entered before the Georgia Court of Appeals decided *Chancellor* in 1998. *Causey v. Central Adjustment Bureau, Inc.* is an order from 1986 in which the Court deferred ruling on a motion to dismiss, expressing some reservation about the appropriate scope of § 10–1–396, and noting that the contours of the exemption may be fleshed out further by the Georgia courts. *Causey v. Central Adjustment Bureau, Inc.*, No. 1:86–cv–1381 (N.D.Ga. Oct. 2, 1986). In the second case, *Brooks v. Comprehensive Receivable Mgmt. Serv., Inc.*, the Court found that debt collection was not pervasively regulated by any agency of the state of federal government and that plaintiff's claim under the Fair Business

---

**3.** For a discussion of the different state unfair and deceptive practices acts and the varied treatment of coverage and exemption issues that arise, *see* JONATHAN SHELDON & CAROLYN L.

CARTER, NAT'L CONSUMER LAW CTR., UNFAIR AND DECEPTIVE ACTS AND PRACTICES § 2.3.3 (4th ed. 1997 & Supp.2000).

Practices Act should proceed. *Brooks v. Comprehensive Receivable Mgmt. Serv., Inc.*, No. 1:92–cv–1604 (N.D.Ga. Sept. 21, 1993). The other two orders cited by plaintiff, one of which was also decided before *Chancellor*, contain no discussion of the exemption statute.[4]

Plaintiff also argues that Ga. Code Ann. § 10–1–391(b) requires a finding that the exemption in § 10–1–396(1) cannot apply to claims against residential mortgage brokers. Section 10–1–391(b) provides that the FBPA should be "interpreted and construed consistently with the interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5(a)(1) of the Federal Trade Commission Act." Plaintiffs' argument appears to be that since the Federal Trade Commission can address unfair trade practices of residential mortgage lenders, then the FBPA must apply to the same practices. Plaintiff misreads § 10–1–391(b). Section 5(a)(1) of the FTCA[5] declares unfair and deceptive acts affecting commerce to be unlawful, and Ga. Code Ann. § 10–1–391(b) merely indicates that the Federal Trade Commission interpretations and constructions of what constitutes an "unfair" or "deceptive" practice should be used in construing the state law. *See* Donna S. Shapiro, Note, *The Georgia Fair Business Practices Act: Business As Usual,* 9 GA. ST. U.L. REV. 453, 461 (1993). There is simply no logical argument for construing § 10–1–391(b) to mean that any conduct or industry regulated by the Federal Trade Commission is not exempt under § 10–1–396(1), and none of the cases cited by plaintiff supports plaintiff's position.

The issue here then is whether there is sufficient state or federal regulation of the defendant's alleged conduct so as to exempt the action from the FBPA. Defendant has a mortgage broker license issued by the Georgia Department of Banking and Finance. As a licensee, he is governed by the regulations of that agency and by the provisions of Georgia's Residential Mortgage Act found at Ga. Code Ann. §§ 7–1–1000 *et seq.* The direct mail advertisement referred to in plaintiff's complaint is governed by the rules and regulations of the Georgia Department of Banking and Finance, Chapter 80–11–1, which pertain to residential mortgage brokers and lenders. Regulation 80–11–1–.02(a) requires that advertisements for mortgage loans shall not be false, misleading or deceptive. Ga. Comp. R. & Regs. r. 80–11–1–.02(a)(2001). Defendant argues that the conduct alleged in plaintiff's complaint is further regulated by the Georgia Residential Mortgage Act, and in particular § 7–1–1013 which prohibits any person transacting a mortgage business from misrepresenting the material facts or making false statements or promises likely to influence, persuade or induce an applicant for a mortgage loan.

The state regulation applicable in this matter does not of itself cause the conduct alleged in the complaint to be exempt because of Ga. Code Ann. § 7–1–1020. This section appears in Article 13 of Chapter 1 of Title 7 of the Georgia Code, and Article 13 is entitled Licensing of Mortgage Lenders and Mortgage Brokers. Section 7–1–1020 provides that nothing in Article 13 limits any statutory or common law right of any person to bring any action in any court for any act involved in the mortgage

---

4. *Falls v. Continental Central et al.*, No. 1:97–cv–1085 (N.D.Ga. Sept. 15, 1998); *Converse v. Credit Claims and Collections et al.*, No. 1:92–cv–617 (N.D. Ga. June 5, 1992).

5. 15 U.S.C. § 45 (1994 & Supp.1996)

business or the right of the state to punish any person for any violation of any law. It also contains the following language: "Without limiting the generality of the foregoing, nothing in this article shall be construed as limiting in any manner the application of Part 2 of Article 15 of Chapter 1 of Title 10, the 'Fair Business Practices Act of 1975.'" Section 7–1–1020 was enacted in 1993, eighteen years after the FBPA. It appears from a plain reading of § 7–1–1020 that the State Legislature did not intend to limit the FBPA's application as a result of the Georgia laws governing the mortgage lenders and brokers, and defendant's arguments that the provisions of Article 13 were intended to displace the FBPA are not persuasive.

Defendant's argument regarding federal regulations, however, is not disputed by the plaintiff. When defendant first filed his motion to dismiss, the Court directed defendant's counsel to file a supplemental pleading outlining the specific regulations governing defendant's conduct. Defendant filed a supplemental pleading, but only referenced state statutes, and defendant did not refer to any federal statutes or regulations governing the conduct at issue in that pleading. In defendant's motion to reconsider, defendant argued that he is regulated by a "huge and complex body of federal law." The Court again directed defendant to file a supplemental pleading outlining the specific federal regulations or federal statutes governing defendant's conduct. On January 3, 2002, defendant filed a pleading, contending that his conduct generally, as well as the specific conduct alleged in this case, is regulated by the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*; the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 to 1691f; Regulation B of the Federal Reserve Board, 12 C.F.R. §§ 202.1 *et seq.*; the Truth in Lending Act, Regulation Z, 12 C.F.R. §§ 226.1 *et seq.*; 18 U.S.C.

§ 709(a criminal statute dealing with misrepresentations of HUD association), the Federal Trade Commission; the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601 *et seq.*; and Regulation X to that statute, 24 C.F.R. §§ 3500.1 *et seq.* Plaintiff has not filed any reply, and thus it does not appear that plaintiff contests defendant's assertion that his conduct is regulated by numerous federal statutes and regulations. Considering the case law in Georgia which construes the FBPA to exempt conduct in regulated areas of activity and the parties' apparent agreement that the conduct at issue is covered by the federal law now identified by the defendant, the Court concludes that the complaint under the FBPA must be dismissed.

In conclusion, under *Chancellor, Taylor* and *Brogdon,* the FBPA does not apply in heavily regulated areas of activity, unless otherwise expressed in the state laws. While the Court concludes that the Georgia regulation of mortgage brokers alone would not displace the FBPA's applicability due to GA. CODE ANN. § 7–1–1020, the federal regulation of the conduct displaces FBPA coverage and bars the plaintiff's claim in this adversary proceeding under the FBPA. Since the complaint is based solely on the FBPA, defendant's motion to dismiss is hereby granted. A judgment will be issued for the defendant.