**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 30, 2024**

# In the Court of Appeals of Georgia

A24A0787. REGIONAL FINANCE COMPANY OF GEORGIA, LLC v. PEARSON.

GOBEIL, Judge.

Nicholas Pearson sued Regional Finance Company of Georgia, LLC ("Regional Finance") for (1) negligence and (2) violations of the Georgia Fair Business Practices Act ("GFBPA" or "the Act"), OCGA § 10-1-390 et seq., after Regional Finance sent an unsolicited live check to Pearson, which was deposited without Pearson's knowledge or permission and created a loan in his name. On appeal, Regional Finance argues that it is entitled to summary judgment on both claims. For the reasons set forth below, we affirm in part and reverse in part the trial court's judgment.

In reviewing a ruling on a motion for summary judgment, we construe the evidence in the light most favorable to the non-moving party. We conduct a de novo

review to determine whether there is a genuine issue of material fact and whether undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. See OCGA § 9-11-56; *Cleveland v. Team RTR2, LLC*, 359 Ga. App. 104, 104 (854 SE2d 756) (2021).

So viewed, the record shows that Regional Finance is a lender that sends so-called "unsolicited live checks" to potential consumers. These checks become loans subject to repayment once they are deposited or cashed by their recipient. The critical facts here are generally undisputed. In August 2021, Regional Finance sent one of these unsolicited live checks to Pearson, in the amount of $3,100. According to Pearson (the non-movant in this case), he was unaware this check had been sent to him, and it was deposited without his permission by an unknown third party. On August 25, 2021, a Regional Finance employee contacted Pearson to solicit payment for the now-pending loan in his name. Pearson assumed the phone call to be a scam, and took no action at that time. He received a letter from Regional Finance several days later that contained the terms of this loan, including an interest rate of 31.99 percent.

After receiving the letter, Pearson contacted Regional Finance to dispute the loan. He spoke to a Regional Finance manager, and the two discussed the established process Pearson would need to undertake to contest the loan as fraudulent, including filing a police report, executing a notarized affidavit of fraud, and awaiting the results of a Regional Finance investigation. Pearson alleges that the Regional Finance employee admitted to him that similar instances of fraud had occurred via these unsolicited live checks and that there was no system in place to reimburse him any costs he might incur contesting the fraud.

Pearson demanded certain relief from Regional Finance, which was not provided, and Pearson then filed the instant action.[1] His amended complaint raised three claims. The first two claims, for negligence and gross negligence, alleged that Regional Finance breached its duties to "act reasonably in verifying that an individual who was cashing an unsolicited live check was the consumer to whom [Regional Finance] intended to send the check" and to "act reasonably in investigating any loan that was initiated by the cashing of an unsolicited live check upon complaint by the intended consumer that such loan was not initiated by him or her." In Count 3,

[1] Regional Finance did ultimately complete its investigation into Pearson's situation and cancelled the loan in his name.

Pearson asserted a claim for violation of the GFBPA, alleging that Regional Finance engaged in unfair and deceptive practices by (1) allowing someone other than him to cash the check that consummated a loan in his name; (2) failing to verify that he was the individual who cashed the check; (3) representing that he was obligated to repay the loan that resulted from fraud; (4) reporting the fraudulent loan to credit reporting agencies; and (5) failing to investigate the fraud without undertaking the "lengthy, onerous, and costly process" outlined by Regional Finance.

Regional Finance moved for summary judgment. On the negligence claims, Regional Finance argued that Pearson failed to establish all four essential elements: duty, breach, causation, and damages (the failure of which to establish any element would be sufficient to entitle it to summary judgment). As for the GFBPA claim, Regional Finance argued that the GFBPA does not apply in this scenario because the act applies only to the unregulated consumer marketplace, and Regional Finance operates within the highly regulated lending industry. Regional Finance also argued that Pearson could not show unfair or deceptive business practices, causation, or damages under the GFBPA.

After a hearing, the trial court denied the motion. The court first found that Regional Finance owed a duty to Pearson, pointing to evidence that Regional Finance knew that there was a risk of fraud with sending unsolicited live checks to potential customers. The trial court next found that questions of fact remained regarding breach and causation. Finally, the court found that Pearson established damages sufficient to survive summary judgment. Accordingly, the court denied summary judgment as to the negligence and gross negligence claims.

Next, the trial court found that it is "undisputed that the unsolicited live check at issue was not subject to the Georgia Installment Loan Act or regulations issued by the Georgia Department of Banking and Finance given the amount of the accompany[ing] loan," thus negating Regional Finance's arguments that it was exempt from the GFBPA.[2] Further, the court found sufficient evidence to support Pearson's allegations of unfair business practices. Accordingly, the trial court denied summary judgment on this claim as well. Regional Finance obtained a timely

_____

[2] Ga. Comp. R. & Regs. r. 80-14-5-.04 (1) regulates unsolicited live checks to "activate a loan regulated by the Georgia Installment Loan Act[.]" The Georgia Installment Loan Act, in turn, covers loans in the amount of $3,000 or less. OCGA § 7-3-3 (7). The check sent to Pearson was for $3,100.

certificate of immediate review and we granted its application for interlocutory appeal. Court of Appeals Case No. A24I0016 (granted Sept. 5, 2023).

1. On appeal, Regional Finance challenges the trial court's failure to grant summary judgment on Pearson's negligence claims, arguing that Pearson failed to establish (a) duty; (b) breach; and/or (c) causation. We hold that the trial court erred in denying summary judgment on these claims.

To sustain a negligence claim, Pearson must establish four elements: duty, breach of duty, causation and damages. See *Retail Property Trust v. McPhaul*, 359 Ga. App. 345, 347 (1) (a) (857 SE2d 521) (2021). Georgia law provides that "[t]he threshold issue in any cause of action for negligence is whether, and to what extent, the defendant owes the plaintiff a duty of care." *Wilson v. Guy*, 356 Ga. App. 509, 511 (1) (848 SE2d 138) (2020) (citation and punctuation omitted). "This issue is a question of law." *Sheaffer v. Marriott Int'l, Inc.*, 349 Ga. App. 338, 340 (1) (826 SE2d 185) (2019) (citation and punctuation omitted). "A legal duty sufficient to support liability in negligence is either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts." Id. (citation and punctuation omitted) "In

the absence of a legally cognizable duty, there can be no fault or negligence." Id. (citation and punctuation omitted).

Pearson asserted that Regional Finance breached its duties to: (1) "act reasonably in verifying that an individual who was cashing an unsolicited live check was the consumer to whom [Regional Finance] intended to send the check" and (2) "act reasonably in investigating any loan that was initiated by the cashing of an unsolicited live check upon complaint by the intended consumer that such loan was not initiated by him or her." Pearson argues that these duties find their "basis in the longstanding common law maxim that defendants owe a duty to exercise ordinary care to protect others based on the foreseeable risk of harm from their actions, and that defendants owe a duty of care to ones that they have put in peril through their actions." However, the Supreme Court of Georgia has expressly rejected any precedent "to the extent it created a general legal duty to all the world not to subject others to an unreasonable risk of harm." *Dept. of Labor v. McConnell*, 305 Ga. 812, 816 (3) (a) (828 SE2d 352) (2019) (citation and punctuation omitted). And, although a party may have a legal duty to give reasonable assistance where its negligence has caused a particular risk of harm, *Alexander v. Harnick*, 142 Ga. App. 816, 817 (3) (237

7

SE2d 221) (1977), Pearson does not assert that Regional Finance was negligent in sending the check. Thus, this principle of law provides no basis for his claims.

Further, Pearson does not specify what level of care is required. See *Wells Fargo Bank, N. A. v. Jenkins*, 293 Ga. 162, 164 (744 SE2d 686) (2013) (negligence plaintiff must show "the alleged breach of a legal duty with some ascertainable standard of conduct"). The trial court relied on evidence of Regional Finance's anti-fraud policies to establish a duty to prevent fraud. However, a company's private policy does not establish the governing standard of care, nor does it create a legal duty where one does not otherwise exist. *Bartenfeld v. Chick-fil-A, Inc.*, 346 Ga. App. 759, 764 (1) (b) (815 SE2d 273) (2018). See *Doe v. HGI Realty, Inc.*, 254 Ga. App. 181, 182-183 (561 SE2d 450) (2002) (affirming grant of summary judgment in favor of landlord and holding that landlord's internal security manual stating that security guards should patrol the inside of the mall daily did not create an affirmative duty to do so). And neither the trial court nor Pearson have cited any relevant authority or provided any evidence suggesting what standard of care Regional Finance owed Pearson beyond its preestablished internal policies. See *DaimlerChrysler Motors Co., LLC v. Clemente*, 294

8

Ga. App. 38, 55 (7) (668 SE2d 737) (2008) (reversing the trial court's denial of summary judgment where the plaintiff failed to point to any statute or other basis creating a standard of care owed by the defendant).

Accordingly, we conclude that the trial court erred in denying summary judgment on Pearson's negligence claims. See *Retail Property Trust*, 359 Ga. App. at 345 ("If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.") (citation and punctuation omitted). We therefore reverse in part the trial court's judgment.

2. Regional Finance also disputes the trial court's denial of summary judgment on Pearson's GFBPA claim, arguing that: (a) the GFBPA does not apply to its conduct in this case; and/or Pearson did not establish that (b) Regional Finance committed unfair or deceptive business practices; or that (c) Regional Finance's actions caused his injury. We ultimately affirm the trial court's judgment on this claim.

a. The GFBPA was enacted to protect consumers from unfair or deceptive practices in the conduct of any trade or commerce in this state. OCGA § 10-1-391 (a). As the GFBPA sets forth, the Act "shall be liberally construed and applied to

promote" this underlying purpose. Id. However, our Court has held that "the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that FBPA not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise." *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga. App. 38, 45 (2) (502 SE2d 799) (1998). To that end, the Act carves out from its coverage any "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States[.]" OCGA § 10-1-396 (1). This "specific authorization" exemption lies at the heart of this dispute.

First, we acknowledge that there is limited authority on what precisely constitutes "specific authorization." At this stage of the proceeding, however, we find that Regional Finance has failed to establish that its actions in this case were so "specifically authorized" as a matter of law. Although unsolicited live checks are not prohibited by law, the only regulations covering this specific type of financial instrument relied upon by the parties is found in Ga. Comp. R. & Regs. r. 80-14-5-.04.

10

However, such regulations apply only to loans that qualify under the Georgia Installment Loan Act (loans of $3,000 or less, OCGA § 7-3-3 (7)). By sending the check to Pearson in the amount of $3,100, Regional Finance's actions presumably are not governed by such regulations.

Regional Finance argues that because the consumer lending industry and lending institutions are heavily regulated, the GFBPA does not apply. Indeed, we have excluded the GFBPA from disputes in certain heavily regulated industries, such as the insurance industry, *Ferguson v. United Ins. Co. of Am.*, 163 Ga. App. 282, 282-283 (2) (293 SE2d 736) (1982), the motor vehicle finance industry, *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga. App. 38, 44-45 (2) (502 SE2d 799) (1998), and the residential mortgage industry, *James v. Bank of Am., N.A.*, 332 Ga. App. 365, 369 (4) (772 SE2d 812) (2015). However, in each of those cases, we highlighted the existence of more than just regulation of an industry broadly. Rather, we pointed to specific laws or regulations that covered the allegedly unfair or deceptive actions of the defendants in those cases. See *Ferguson*, 163 Ga. App. at 283 (2) (citing specific insurance regulations that cover unfair trade practices within the industry); *Chancellor*, 233 Ga. App. at 45 (2) (citing federal regulations that cover required disclosures by lenders);

*James*, 332 Ga. App. at 366-367 (1) (citing state laws covering notice requirements to initiate foreclosure). Though not binding on this Court, we note that federal courts have been more specific about when the GFBPA is excluded, stating that "where a consumer remedy exists, with no need to fill in a legal gap or create a consumer right, and where the industry which is the subject matter of the situation explicitly defines wrongful conduct or unfair and deceptive practices, the FBPA has no application." *In re Taylor*, 292 BR 434, 438 (Bankr. N.D. Ga. 2002) (quoting *Taylor v. Bear Stearns & Co. et al.*, 572 FSupp. 667, 675 (II) (B) (N.D. Ga. 1983)).

To that end, Regional Finance does not help itself by failing to direct this Court (or the trial court) to any specific laws or regulations that control its actions in this case. Nor does Regional Finance point to laws or regulations that would provide Pearson with a remedy for his allegations, or would define the adequacy of Regional Finance's policies to prevent or combat fraud.[3] Given that Regional Finance is the

---

[3] Regarding the evidence before the trial court, although Regional Finance asserts that "[t]he evidence further demonstrates that the lending industry itself is highly regulated," its only citation to the record is to a page of a Regional Finance supervisor's affidavit stating that Regional Finance used information gathered from the Credit Bureau to select Pearson as a recipient of one of these live-check loans, and describing that the loan was deposited, a loan was opened, and someone from Regional Finance spoke to Pearson about the fraud investigation. This obviously does not illuminate how the record included evidence that would entitle Regional Finance to

appellant in this Court, it bears the burden of showing that the trial court committed error. See *Healthcare Staffing, Inc. v. Edwards*, 360 Ga. App. 131, 135 (2) (860 SE2d 874) (2021) ("It is not the job of this Court to find legal authority to support a party's claim of error, nor would it be appropriate for us to do so."). Here, without Regional Finance directing this Court to a state or federal law or regulation under which Pearson may be able to seek review of these practices by Regional Finance, or otherwise authorizing or controlling Regional Finance's actions in this case, we find that Regional Finance has failed to show that Pearson's claim was excluded from the GFPBA as a matter of law. See *Horne v. Harbour Portfolio VI, LP*, 304 FSupp.3d 1332, 1343-1344 (F) (N.D. Ga. 2018) (finding that defendant appellant did not meet its burden to show that the GFBPA was inapplicable where it failed to cite legal authority showing that its actions were regulated by any specific law or regulation).

b. Regional Finance also argues that the trial court erred in finding genuine issues of material facts remain as to whether Regional Finance committed an unfair

summary judgment on this issue. *Stewart v. Johnson*, 358 Ga. App. 813, 814 (856 SE2d 401) (2021) (it is not this Court's responsibility to search the record on behalf of a party to find the evidence that may support its claims). Although we do not deem this enumeration of error abandoned, Regional Finance's failure to point this Court to any dispositive evidence that was before the trial court is relevant to our determination of whether it has shown error.

or deceptive business practice and whether Regional Finance's actions were the proximate cause of his injuries. However, both of these questions are typically for a jury, except in plain and indisputable cases. See *Regency Nissan, Inc. v. Taylor*, 194 Ga. App. 645, 648 (2) (391 SE2d 467) (1990) ("the question of whether a particular act or omission, or a series thereof, constitutes unfair or deceptive acts or practices within the meaning of OCGA § 10-1-393 generally is for jury resolution"); *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003) ("What amounts to proximate cause is undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent") (citations and punctuation omitted). Here, where Pearson presented evidence that Regional Finance took actions to collect on a loan after being informed it was the result of fraud, we find no error in the trial court allowing this claim to proceed.

As for causation, whether Regional Finance's business practices caused Pearson's injuries remains a disputed issue of fact at this stage of the proceedings. Regional Finance argues that because the risk of fraud to any particular individual caused by the mailing of the unsolicited live checks is so remote (less than one percent

according to their internal statistics), it is not a foreseeable consequence for which they can be held liable. However, although the risk is small, the injury complained-of here does occur at least dozens of times per year. Thus, the statistics here do not necessarily negate the question of foreseeability. See *Boone v. Udoto*, 323 Ga. App. 482, 484 (1) (747 SE2d 76) (2013) ("Foreseeable consequences are those which . . . because they happen so frequently, may be expected to happen again. One is not bound to anticipate or foresee and provide against that which is unusual or that which is only remotely and slightly probable.") (citation and punctuation omitted; emphasis omitted). And even criminal intervenors only break the chain of causation when their actions could not reasonably have been anticipated by the defendant. *Blondell v. Courtney Station 300 LLC*, 362 Ga. App. 1, 8 (2) (865 SE2d 589) (2021) ("For an independent act or event to eliminate other conduct as a proximate cause, it must be neither foreseeable by the defendant nor triggered by the defendant's act, and it must have been sufficient of itself to cause the injury.") (citation and punctuation omitted).

Accordingly, we find that questions of fact remain as to causation, and we ultimately affirm the trial court's order in part to the extent it denied summary judgment on Pearson's GFBPA claim.

*Judgment affirmed in part, reversed in part. Barnes, P. J., and Pipkin, J., concur.*